d/f

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAN WEI SHIU and DAN FENG LIN,

                Plaintiffs,

        -against-

NEW PEKING TASTE INC. d/b/a New Peking
Taste Restaurant, GEN XU SHU, XIAO MEI
WANG, JOHN DOE, JANE DOE, ABC
CORPORTATION,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-1175 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiffs Man Wei Shui and Dan Feng Lin filed this putative class action in March 2011, alleging numerous violations of federal and state employment law arising from their employment at Defendant New Peking Taste Restaurant, owned by Defendant Xu[1] and his wife, Defendant Wang. (See Compl. (Dkt. 1).) In 2012, the court struck Defendants' Answer because they had failed to comply with discovery obligations. (June 1, 2012, Minute Order (Dkt. 40).) The Clerk of Court subsequently noted their default, (July 3, 2012, Entry of Default), and Plaintiffs moved for a default judgment, (Apr. 8, 2013, Mot. for Default J. (Dkt. 58).) The court referred this motion to Magistrate Judge Roanne L. Mann. (Apr. 19, 2013, Order Referring Mot. (Dkt. 61.) On October 24, 2013, Judge Mann filed her report and recommendations ("R&R"). (Dkt. 80.) Defendants subsequently objected, but only as to the damage calculations. (Nov. 12, 2013, Def. Obj. to R&R (Dkt. 81).) For the reasons explained below, Judge Mann's R&R is ADOPTED in full.

---

[1] Although named in the complaint as "Gen Xu Shu," Defendant Xu's correct name is Shu Gen Xu. (R&R at 1 n.1.)

I.  BACKGROUND

A.  Facts

The factual background underlying Plaintiffs' motions is set forth in detail in Judge Mann's R&R. (See R&R at 2-11.) The pertinent facts for this Memorandum & Order are as follows. Plaintiffs worked for Defendants' restaurant as a delivery person and a cashier respectively. (Id. at 2.) They sued for back wages, alleging that their former employer failed to comply with the relevant federal and state employment laws. (Id.) There then began a long and arduous discovery process in which Defendants repeatedly failed to comply with court orders. (Id. at 2-4.) Defendants also had difficulty securing counsel qualified to practice before this court. (Id. at 3 n.3.)

On February 23, 2012, Plaintiffs moved to strike Defendants' answer after Defendants repeatedly ignored their discovery requests and failed to appear for depositions. (Mot. to Strike (Dkt. 31).) The court referred the motion to Judge Mann. (May 21, 2012, Order.) On June 1, 2012, Judge Mann held a hearing on the motion to strike. (Minute Order.) In that hearing, "Defendants for the first time claimed that defendant Xu had kept contemporaneous payroll records in two composition books that purported to show the days and weeks the plaintiffs had worked, as well as the amount of their weekly pay." (R&R at 3.) A paralegal from Neiman Wang, Defendants' previous counsel, was present at the hearing and stated that counsel was aware of the existence of these books in December 2011, but Defendants never produced them in discovery. (Id. at 4.) Defendants conceded that they had not shown good cause for failing to respond to Plaintiffs' requests. (Id.) Judge Mann granted the motion to strike the Answer and Defendants did not object. (Id.)

Plaintiffs moved for default judgment on April 8, 2013. (First Mot. for Default J. (Dkt. 58)).) Defendants filed a response on May 22, 2013, conceding liability, but opposing the amount of damages based on the number of hours worked and the pay rate claimed by Plaintiffs. (R&R at 4.) To support their contentions, Defendants filed copies of the composition books that were discussed in the June 1, 2012, hearing before Judge Mann. (Id. at 4-5.) As liability was not in question, the court referred damages to Judge Mann, who then ordered the parties to appear for an inquest on September 16, 2013. (Id. at 5.) Defendant Wang failed to appear, in violation of Judge Mann's scheduling order and despite the order's specific warnings that the court would impose sanctions, including preclusion of evidence. (Id. at 5.) Defendants nonetheless sought to introduce the composition book records through the testimony of Defendant Xu. (Id.) Plaintiffs objected, arguing that the composition books had not been produced during discovery. (Id.)

On October 24, 2013, Judge Mann filed her R&R recommending that the court grant the motion for default and award $16,365.00 in damages to Plaintiff Shui, $18,806.94 in damages to Plaintiff Lin, and $17,454.46 in attorney's fees and costs for both Plaintiffs. (Dkt. 80.)

Although Judge Mann allowed the composition books at issue into evidence, she assigned little weight to that evidence because of the circumstances under which they were produced, the lack of credible testimony regarding the records, and the suspicious symmetry of the entries. (R&R at 16.) She also drew an adverse inference against Defendants based on Defendant Wang's failure to appear, and found that Defendant Xu's testimony about the composition books was not credible. (Id. at 8, 16.) Defendants now contest Judge Mann's conclusions with regard to the amount of damages owed to Plaintiffs, and Plaintiffs respond defending the R&R. (See Def. Obj. to R&R (Dkt. 81); Nov. 26, 2013, Pl. Mem. in Opp. (Dkt. 82).)

3

## II. DISCUSSION

### A. Standard of Review

When a district court receives timely objections to a magistrate judge's R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). Portions of the R&R to which a party makes no objection are reviewed for clear error. U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS) (WDW), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012).

### B. Defendants' Objections

Although Plaintiffs argue that the present objections were untimely, the objections were filed within the date specifically given by the R&R. (See Pl. Opp. at 2; R&R at 24.) The court will treat them as timely. Defendants object only to the damages portion of Judge Mann's R&R. (Def. Obj. at 1.) In particular, they believe that Judge Mann should have given greater weight to the composition books, produced for the first time long after the close of discovery, that purport to show the days that Plaintiffs worked and the amount of their wages. Defendants argue that these composition books should have been the basis for Judge Mann's calculation of the amount of wages owed to Plaintiffs. In particular, Defendants object to the adverse inference drawn from Defendant Wang's failure to appear, the decision to accord less weight to Defendant Xu's testimony because of its inconsistencies, and, ultimately, the decision not to credit the composition books. (Id. at 3-4.) Although Defendants state that Judge Mann excluded the notebooks, (id. at 3), Judge Mann in fact allowed them to be entered into evidence but gave them

4

little weight (R&R at 10). The court takes Defendants' objections to be to the relative weight that Judge Mann accorded their evidence.

### 1. Adverse Inference Based on Defendant Wang's Failure to Appear

Judge Mann cited Defendant Wang's repeated failure to appear as reason to draw an adverse inference about the content of her potential testimony, namely that Ms. Wang's testimony would not aid in authenticating the documents because it would not support the position that they are contemporaneous business records and would not help to excuse Defendants' delay in producing them. (R&R at 8.) Rather, Judge Mann drew the inference that "her testimony would have supported plaintiffs' claims regarding their rate of pay and duration and hours of employment." (Id. (citing Gen. Motors, LLC v. Lewis Bros., LLC, No. 10-CV-725(SF), 2013 WL 3282866, at *5-6 (W.D.N.Y. June 27, 2013).) Defendants argue that no adverse inference about the validity of the evidence can be drawn from Defendant Wang's failure to appear. This, they assert, is because the notebooks are tangible records that presumably could be authenticated through testimony other than Ms. Wang's. (Def. Obj. at 3.)

Federal Rule of Civil Procedure 16(f) states that if a party "fails to appear at a scheduling or other pretrial conference," a court may impose "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." The latter rule authorizes a range of sanctions including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Before imposing a sanction of this kind—an adverse inference as a punishment for misconduct—the court must find facts sufficient to support the sanction. See Mali v. Federal Ins. Co., 720 F.3d 387, 393 (2d Cir. 2013). In deciding whether to impose Rule 37 sanctions for a witness's failure to appear, the court should consider "(1) the willfulness of the non-compliant party or the reason for

5

noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences . . . ." of non-compliance, along with other factors. Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302-03 (2d Cir. 2009) (citing Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)); (see also R&R at 6.)

Judge Mann correctly applied these factors here. Defendant Wang was aware of the order, but asserted that she was too ill to appear without providing any evidence to substantiate that excuse. (R&R at 7.) She had a pattern of failing to appear, and had previously been sanctioned for failing to appear at her deposition. (Id.) This pattern suggests that she was willfully non-compliant, that lesser sanctions would not be effective, and that she was amply aware that sanctions could result from her actions. (R&R at 8.)

Although Defendant Xu claimed to be the author of the notes in the composition books, he stated that he was not in charge of running the restaurant and that his wife, Defendant Wang, oversaw its daily operations. (R&R at 16 & n.12; Sept. 16, 2013, Hearing Tr. (Dkt. 79) at 36:12-13.) As a result, his time entries for Plaintiffs likely would have been based on the observations of Ms. Wang. Although business records may be admitted without the testimony of someone with specific knowledge of the events they document, such testimony could be helpful to the overall judgment of reliability that the court is to make. See Saks Int'l, Inc. v. M/V Export Champion, 817 F.2d 1011, 1013 (2d Cir. 1987) ("The determination of whether, in all the circumstances, the records have sufficient reliability to warrant their receipt in evidence is left to the sound discretion of the trial judge.") Defendant Wang's failure to appear thus deprived the court of testimony that could have weighed in favor of the composition book entries. (R&R at 8.) An inference that her testimony would not have done so is an appropriate sanction.

6

2. <u>Defendant Xu's Credibility</u>

Defendants object to Judge Mann's decision to credit the testimony of Plaintiffs over that of Defendant Xu, a decision that led her to further discount the composition book evidence in relation to other evidence in the case.

Language difficulties made the hearing an unusually difficult and confusing one and may have contributed to some of the contradictory answers given by Defendant. (<u>E.g.</u>, Hearing Tr. at 3:13-5:1 (Cantonese interpreter notes that he is only the interpreter for the hearing, and was originally hired by Plaintiffs; Defendants were unable to find another interpreter); <u>id.</u> at 16:19-25 (interpreter notes that witness speaks Mandarin instead of Cantonese dialect, but assures court that he is qualified to interpret both dialects); <u>id.</u> at 22:4-5 (Defendant Xu seems not to understand that the court wishes him to state his family name and not his given name).) Moreover, Defendants' counsel did not ensure that Defendant Xu had copies of his own affidavits in a language and character system that his client could understand.[2] (<u>E.g.</u>, <u>id.</u> at 54:15-16, 55:4-5 (Defense counsel states that his client never received a Chinese version of his affidavit).)

Notwithstanding the possibility that some of the inconsistencies in Defendant Xu's testimony stem from language difficulties rather than a desire to mislead, Judge Mann's impression that she could not rely on Defendant's testimony has ample support. (R&R at 16 n.12-13.) The transcript reveals potential memory problems and a thorough and effective cross-examination of Defendant Xu that raised doubts as to his credibility independent of whatever doubts may exist regarding his comprehension of the proceedings. (<u>E.g.</u>, Hearing Tr. at 37:2, 38:1-20 (Defendant Xu seems to have trouble remembering Plaintiffs' names and how often they

---

[2] The transcript does not clarify what dialect Defendant Xu speaks and whether he reads Chinese in traditional or simplified characters. It is possible that any Chinese translations of his affidavits that did exist were in characters that he could not recognize.

were paid); id. at 44:13-16 (when confronted with affidavits in which he claims both to have sold restaurant and to be running it at a loss, Defendant states only that his memory does not match his affidavits).) Judge Mann noted that Defendant's testimony regarding the source of his knowledge about how long Plaintiffs worked shifted several times under questioning. (R&R at 16 n.12.) So too did his testimony regarding his ownership of the restaurant. (Id. at 16 n.13.) Plaintiffs Shiu and Lin gave accounts that were internally consistent and consistent with each other, leading Judge Mann to view them as more credible. (Id. at 17-18.)

Finally, and regardless of its credibility, Defendant Xu's testimony could only do so much to help Judge Mann evaluate the accuracy of his time entries. Defendant Xu was not the Plaintiffs' manager and lacked personal knowledge regarding their actual hours of work. Thus, his testimony would be of limited use in convincing the court to rely on the composition books over Plaintiffs' evidence.

### 3. The Weight of the Composition Book Evidence

Although Judge Mann could have precluded use of the composition book evidence entirely, she decided not to do so. (Id. at 9-10.) However, she did not assign the books the weight Defendants' would have liked. Ultimately, Defendant Wang's failure to appear and Judge Mann's assessment of Defendant Xu's lack of credibility contributed to her conclusion that the composition books were "post-litigation fabrications." (Id. at 11.) Defendants place significant emphasis on contesting Judge Mann's assessment that the entries in the composition books appeared to be so uniform as to arouse suspicion that all entries were created at once. (Def. Opp. at 3; see R&R at 16.) The court has access only to copies of the composition book entries, which are in a different language and character system, making it difficult to assess their supposed uniformity. But, even without considering the issue of uniform entries, the court

agrees with Judge Mann's decision to accord less weight to the composition book evidence in light of its late production and the other evidence that contradicted it. Her comment was only a small part of her overall assessment of the situation, which relied on her extensive dealings with the parties and her considered judgment regarding the credibility of the witness who appeared in front of her. The court agrees with her choice to credit Plaintiffs', rather than Defendants', version of events.

### III. CONCLUSION

As explained above, the court agrees with Judge Mann's assessment of the evidence relating to damages. The court thus ADOPTS Judge Mann's October 23, 2013, R&R and awards award $16,365.00 in damages to Plaintiff Shui, $18,806.94 in damages to Plaintiff Lin and $17,454.46 in attorney's fees and costs for both plaintiffs. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
February 11, 2014

s/Nicholas G. Garaufis

/NICHOLAS G. GARAUFIS
United States District Judge